IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

ANTOINE C. NELSON,

                  Plaintiff,                  OPINION AND ORDER

v.

                                                  18-cv-238-wmc

CAPT. CHRISTOPHER STEVENS, et al.,

                  Defendants.

*Pro se* plaintiff Antoine Nelson, a prisoner at the Green Bay Correctional Institution ("GBCI"), was granted leave to proceed in this lawsuit pursuant to 42 U.S.C. § 1983 on First, Fourteenth and Eighth Amendment claims against defendants. The defendants have moved for partial summary judgment on the ground that Nelson failed to exhaust his administrative remedies with respect to three of his claims: (1) a First Amendment retaliation claim against defendant Christopher Stevens related to Stevens' allegedly falsely accusing Nelson of putting a hit on people to get him placed in administrative confinement; (2) a First Amendment claim against defendants Stevens and Heil for monitoring a phone call between Nelson and his attorney; and (3) a Fourteenth Amendment due process claim that defendants Schueler, Kind, Weisgerber, Clements and Schwochert ignored Nelson's letters complaining about a lack of due process at his disciplinary hearing. For the following reasons, the court is granting in part and denying in part defendants' motion.

OPINION

Under 42 U.S.C. § 1997e(a), "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are

available are exhausted." Generally, to comply with § 1997e(a), a prisoner must also "properly take each step within the administrative process" that are "in the place . . . at the time, [as] the [institution's] administrative rules require," *Pozo v. McCaughtry*, 286 F.3d 1022, 1025 (7th Cir. 2002), including (1) compliance with instructions for filing the initial grievance, *Cannon v. Washington*, 418 F.3d 714, 718 (7th Cir. 2005), and (2) filing all necessary appeals, *Burrell v. Powers*, 431 F.3d 282, 284-85 (7th Cir. 2005).

The purpose of this exhaustion requirement is to give the prison administrators a fair opportunity to resolve the grievance without litigation. *Woodford v. Ngo*, 548 U.S. 81, 88-89 (2006). If a prisoner fails to exhaust administrative remedies before filing his lawsuit, then the court must dismiss the case. *Perez v. Wisconsin Dept. of Corr.*, 182 F.3d 532, 535 (7th Cir. 1999). Because exhaustion is an affirmative defense, however, *defendants* bear the burden of establishing that plaintiff failed to exhaust, *Jones v. Bock*, 549 U.S. 199, 216 (2007), and "once a prison has received notice of, and an opportunity to correct, a problem, the prisoner has satisfied the purpose of the exhaustion requirement." *Turley v. Rednour*, 729 F.3d 645, 650 (7th Cir. 2013).

To exhaust a claim related to a conduct report under the regulations that existed during the relevant time for purposes of plaintiff's lawsuit, prisoners were required first to raise their grievance in the disciplinary hearing and then again on appeal to the warden. *See* Wis. Admin. Code § DOC 303.82(1). Likewise, to exhaust a claim related to administrative confinement, an inmate must raise the defense at the administrative confinement hearing and on appeal to the warden and the DAI Administrator. §§ DOC 308.04(7)(b), 308.04(9). However, challenges to a conduct report or administrative

confinement placement may also be pursued using the Inmate Complaint Review System ("ICRS"), outlined in Wis. Admin. Code Ch. DOC 310. *See* Wis. Admin. Code §§ DOC 310.05, 310.08(2)(a), (3). Prisoners may also use the ICRS to raise issues regarding rules, living conditions, staff actions affecting institution environment, and civil rights. § DOC 310.08(1).

Prisoners start the complaint process by filing an inmate complaint with the institution complaint examiner within 14 days of the occurrence giving rise to the complaint. Wis. Admin. Code § DOC 310.09(6). The complaint may "[c]ontain only one issue per complaint, and shall clearly identify the issue." *Id.* § 310.09(e). If the institution complaint examiner rejects a grievance for procedural reasons without addressing the merits, an inmate may also appeal that rejection. *Id.* § 310.11(6). If the complaint is not rejected, the institution examiner makes a recommendation to the reviewing authority as to how the complaint should be resolved. *Id.* § 310.11(6). The offender complaint is then decided by the appropriate reviewing authority, whose decision can be appealed by the inmate to a correctional complaint examiner ("corrections examiner"). *Id.* §§ 310.12, 310.13. The corrections examiner then makes a recommendation to the Secretary of the Department of Corrections, who takes final action. *Id.* §§ 310.13, 310.14.

I. **First Amendment Retaliation Claim**

Based on Nelson's allegation that Stevens issued a conduct report falsely accusing him of putting hits on people to get Nelson placed on administrative confinement as punishment for not speaking with Stevens, the court granted Nelson leave to proceed on a First Amendment retaliation claim. (1/22/19 Order (dkt. #30) 12-13.) The court's

reasoning hinged on the inference that Stevens' false statements contributed to Nelson's continued placement on administrative confinement status. Defendants argue that Nelson failed to exhaust this claim because he never complained about this false conduct report during the course of his administrative confinement proceedings as required by §§ DOC 308.04(7)(b), 308.04(9). In particular, defendants point out that while Nelson filed two complaints alleging that Stevens lied about Nelson putting a hit on him, the warden and another prisoner, GBCI-2017-22869 or GBCI-2018-1702, Nelson submitted those complaints *well before* his administrative confinement hearings, but failed to complain about these issues again during his administrative confinement proceedings.

While that may be true, Nelson's claim before this court does *not* challenge his administrative confinement, but rather claims that Stevens made these false accusations to punish Nelson for refusing to speak to him. Furthermore, when Nelson availed himself of the ICRS about Stevens' false conduct report, the inmate complaint examiner did not dismiss it on the ground that Nelson had to first bring it up during his administrative confinement proceeding. Instead, his complaints were reviewed on the merits. Specifically, in GBCI-2017-22869, Nelson complained that: (1) Stevens attempted to intimidate, threaten and harass him after Nelson refused to talk to him; and (2) Stevens told Nelson that there were some serious allegations against him that would result in his placement in administrative confinement. Even more specifically, Nelson wrote that Stevens began threatening him and telling him that Nelson would "spend the next 15 to 20 years in Administrative Confinement" if he did not sit down and talk to Stevens. (Ex. 101-1 (dkt. #39-2) 11.) Nelson also wrote: "This is harassment and retaliation for me pursuing

litigation and appealing [a conduct report]." (*Id.*) In GBCI-2018-1702, Nelson also complained that Stevens was putting him at risk of harm in falsely claiming that he put a hit out on a gang leader, and requested that Stevens be forced to stop putting Nelson's "life in jeopardy and retaliating against" him. (Ex. 105 (dkt. #39-6) 11.)

Defendants do not argue that Nelson did not properly exhaust the issues he brought in those complaints. Rather, they argue that since these complaints were submitted well before Nelson's administrative confinement proceedings, Stevens' false charges could not have been sufficiently adverse to support a retaliation claim. The court disagrees. Accepting this argument for purposes of this motion would move the focus from Nelson's actual exhaustion of this claim against Stevens to consideration of the merits of that claim, especially since defendants are essentially asking the court to decide (in the guise of an exhaustion argument) whether it would be reasonable to infer that Stevens' false statements about Nelson amounted to a "sufficiently adverse" action to state a retaliation claim. Since that is not the question before the court, defendants have not proven that Nelson failed to exhaust his administrative remedies with respect to his claim that Stevens retaliated against him by falsely accusing him of putting out a hit on Stevens and another inmate.

## II. First Amendment Monitoring Claim

Defendants next seek judgment on a subset of Nelson's First Amendment claim related to defendant Heil's alleged monitoring of a telephone call between Nelson and his attorney. Defendants argue that while Nelson properly exhausted his claim of interference

5

with legal mail, he did not file an inmate complaint alleging that anyone was monitoring his attorney phone calls. Specifically, on October 3, 2017, Nelson filed GBCI-2017-25493, complaining that he received mail from his attorney that had not been opened in his presence. (Ex. 102 (dkt. #39-3) 10.) Similarly, on October 22, 2017, Nelson filed GBCI-2017-27199, complaining that he learned, after speaking with his attorney, that he was missing some materials that his attorney had sent him in the mail. (Ex. 103 (dkt. #39-4) 11-12.)

In opposition, Nelson essentially concedes that he did not specifically complain about phone monitoring, but instead argues that his mail complaints sufficed to exhaust this claim as well because the court granted him leave to proceed on First Amendment claims related to Stevens' and Heil's "interference with Nelson's communications with his attorney." Moreover, Nelson points out that there is no question that Nelson exhausted his mail interference claim under the First Amendment.

This argument ignores at least two material problems. First, Nelson's inmate complaints did not allege that Heil (or anyone) monitored a phone call with his attorney. Accordingly, Nelson did not afford prison officials the opportunity to address this alleged phone call monitoring. *Lockett v. Bonson*, 937 F.3d 1016, 1027 (7th Cir. 2019) ("[T]he primary purposes of the exhaustion doctrine: it alerts the prison officials to the existence of the problem and affords an opportunity to repair the injury."). Second, Wis. Admin. Code. § DOC 310.09(1)(e) explicitly limits each inmate complaint to *one* issue. The complaints Nelson exhausted addressed just the one issue of his missing legal materials. Thus, even assuming Nelson had intended to challenge the telephone call monitoring in

those complaints, he was not entitled to have them resolved through those two complaints about a claim of interference with his legal mail. Accordingly, the court will grant defendants' motion for summary judgment with respect to Nelson's First Amendment claim that Heil monitored his telephone call.

To be clear, while the court is granting defendants' motion for summary judgment with respect to this *claim*, that does not mean evidence that Heil listened into Nelson's phone calls with his attorney is irrelevant or inadmissible, nor does it warrant dismissing Heil as a defendant. To the contrary, it is reasonable to infer that *if* Heil listened to Nelson's attorney-client phone calls and relayed information from it to Stevens, Heil may also have been personally involved in interfering with his legal mail. Accordingly, as this lawsuit proceeds, the parties should keep in mind that this ruling on exhaustion simply means that Nelson may not proceed on a separate claim for damages against Heil for phone call monitoring.

III. Fourteenth Amendment Due Process Claim

Finally, defendants seek judgment in their favor on Nelson's Fourteenth Amendment due process claim that defendants Schueler, Kind, Weisgerber, Clements and Schwochert ignored his complaints about procedural defects before and during his hearing for Conduct Report 2843714. On December 25, 2017, Nelson filed GBCI-2017-32740, complaining that "Every time I send a letter/request slip [them a letter] [W]arden Eckstein, Security director Kind, Deputy Warden Schu[e]ler do not respond no matter how important the subject matter may be." (Ex. 104 (dkt. #39-5) 10.) Without investigation,

7

this complaint was dismissed on the ground that "[s]taff is not required to respond to every request sent." (*Id.* at 7.)

Defendants acknowledge that Nelson properly exhausted this complaint, but point out that the complaint did not name Weisgerber, Clements or Schwochert. However, Wisconsin's grievance procedures do not require prisoners to specify people to adequately exhaust a claim, so Nelson did not fail to exhaust his claim against those defendants, at least for that reason. *See Maddox v. Love*, 655 F.3d 709, 721 (7th Cir. 2011) (reversing grant of summary judgment and explaining that an inmate need not provide the names or descriptions of defendants in a grievance).

Defendants also point to a more problematic defect in GBCI-2017-32740: Nelson's complaint that his letters were being ignored did not allege that his letters were alerting the recipients to procedural defects that took place during his disciplinary proceedings. While prisoners are not required to articulate legal theories in their inmate complaints, *Riccardo v. Rausch*, 375 F.3d 521, 524 (7th Cir. 2004), a prisoner must alert "the prison to the nature of the wrong for which redress is sought," *Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002). Nelson's complaint may have alerted prison staff that his letters were not being answered in a general sense, but Nelson did not allege any facts that would alert staff that he was trying to redress procedural deficiencies in his conduct report proceedings. Accordingly, the court is persuaded that Nelson did not afford prison staff the opportunity to address the failure of defendants Schueler, Kind, Weisgerber, Clements and Schwochert to respond to his letters *complaining about his disciplinary hearing*. Therefore, the court will grant defendants' motion for summary judgment with respect to Nelson's due process

8

claims against Schueler, Kind, Weisgerber, Clements and Schwochert.

ORDER

IT IS ORDERED that:

1) Defendants' motion for partial summary judgment (dkt. #37) is GRANTED IN PART AND DENIED IN PART as follows:

    a) Defendants' request for judgment in their favor as to plaintiff's First Amendment retaliation claim against Stevens for falsely accusing Nelson of putting out a hit is DENIED.

    b) Defendants request for judgment in their favor as to plaintiff's First Amendment claim related to defendant Heil's monitoring his phone call, and Fourteenth Amendment claim related to defendants' Schueler, Kind, Weisgerber, Clements and Schwochert is GRANTED, and these claims are DISMISSED without prejudice.

Entered this 19th day of December, 2019.

BY THE COURT:

/s/
_____
WILLIAM M. CONLEY
District Judge